IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Bevan Xavier Brooks, ) | |
| a/k/a Bevan Xavier Brooks, Sr. ) | |
| ) | Civil Action No. 2:10-689-TLW-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Captain Curtis L. Bufford, ) | |
| Captain Michael Higgins, ) | |
| Sgt. Timothy Lepet; Ofc. ) | |
| Marcus Smith, Ofc. Kenneth ) | |
| Brown, Ofc. Bowman, Lt. Don ) | |
| Weston, Lt. John Fogle; Ofc. ) | |
| David Riley, Ofc. Prelough ) | |
| (Preylow), Sgt. Larry Jones, ) | |
| Nathaniel Smith, and Director ) | |
| Renaldo Myers, ) | |
| ) | |
| Defendants.[1] ) | |
| ) | |

The Plaintiff, a pro se inmate, seeks relief pursuant to 42 U.S.C. § 1983. This matter is before the Court on the Defendants' Motion for Summary Judgment. (Dkt. # 42.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under § 1983, and submit findings and recommendations to the District Court.

The Plaintiff brought this action on March 15, 2010, seeking damages for alleged civil rights violations. (Dkt. # 1.) On September 20, 2010, the Defendants filed a Motion

---

[1] On May 6, 2010, the Defendants Lt. Samuel Jackson and Sgt. Robert Waters were dismissed from this action by the United States District Court Judge Terry Wooten. (Dkt. # 21.)

for Summary Judgment. (Dkt. # 42.) On November 22, 2011, the Plaintiff filed a response opposing the motion. (Dkt. # 52.)

## FACTS PRESENTED

At the time this action was filed, the Plaintiff was an inmate incarcerated at the Alvin S. Glenn Detention Center ("ASGDC"). In his Complaint, the Plaintiff alleges that while he was incarcerated at the ASGDC, on October 19, 2009, at 10:35 p.m., the Defendant Officer Michele Hughes opened his cell door and allowed another inmate to assault him. (Dkt. # 1 Attach. # 2 -Compl. at 3.)[2] He alleges he suffered a broken nose, facial swelling, and mental stress. *Id.* He states that on March 9, 2010, the other inmate was convicted of assault in magistrate's court. *Id.*

He further alleges that on December 20, 2009, he wrote a grievance to Assistant Director Kathy Harrell in which he complained that he felt unsafe at the ASGDC and requested a transfer. *Id.* He also alleges he had previously voiced his concerns over threats and ill- treatment he alleges he received from the Defendant Captain Curtis Buford. *Id.*

The Plaintiff states that on February 16, 2010, he found glass in his food and he alleges that prior to that the Defendants Officers Marcus Smith and Preylow had been involved in disputes with him and that Officer Smith had commented that they were in charge of his food. (Compl. at 4.) He alleges Officer Preylow laughed at these comments and did not protect him. *Id.* He alleges that he wanted to keep the food tray as evidence,

---

[2]This Complaint was filed in response to the Court's order that the Plaintiff file his claims on a proper complaint form. (Dkt. # 5)

2

but that the Defendants Sgt. Larry Jones and Sgt. Wilson threatened to spray him with mace if he did not turn over the tray. (Compl. at 5.) He alleges he complained on several occasions and began to fear for his life. *Id.* He alleges he either received no response or his concerns were "swept under the rug." (Compl. at 6.)

He alleges that on March 1, 2010, Captain Buford ordered that the Plaintiff be stripped of his clothing while being videotaped. (Compl. at 6.) He alleges that prior to a court appearance for which he was changing into civilian clothing, Captain Buford ordered that he be undressed by Sgt. Lepet. (Compl. at 5.) The Plaintiff alleges Buford did this for his own sexual gratification. *Id.* He alleges also on March 1, 2010, that Buford entered his cell and tampered with his mail and that his legal mail was taken while he was in court. (Compl. at 6.)

On March 2, 2010, at 7:00 p.m., the Plaintiff alleges the Defendant Sgt. Nathaniel Smith placed handcuffs on him too tightly when he was taking the Plaintiff out of his cell. (Compl. at 7.) He alleges that when he complained to Smith, Smith became aggressive and refused to loosen the handcuffs. *Id.* The Plaintiff states he then could barely walk and fell to the floor. *Id.* He alleges Officer Smith ordered Officer Brockington to help lift the Plaintiff off the floor while Smith picked him up by the restraints. *Id.* The Plaintiff states this caused him excruciating pain causing him to scream and yell that he be put down. *Id.* The Plaintiff alleges he filed a grievance about the incident which Captain Buford answered.

On March 10, 2010, at 9:45 a.m., the Plaintiff alleges that Captain Buford told him that he and his officers were going to physically harm the Plaintiff one day. He alleges one

3

hour later he was moved to another cell which he describes as being "out of sight and very very filthy and inhumane . . ." (Compl. at 7.) He alleges that he was denied cleaning supplies. (Compl. at 5.)[3] The Plaintiff also alleges that the paging system in this cell did not work and that Captain Buford told him he could have done to the Plaintiff in this particular cell and nobody would witness it and the Plaintiff would be unable to call for help. *Id.* He alleges he has submitted several complaints stating that he fears for his life and safety, but that nothing was done causing him to live in fear. *Id.*

The Plaintiff also alleges that on March 10, 2010, while he was being escorted to the shower by the Defendants Officer David Riley and Officer Green, he and Officer Riley had a verbal altercation. He states that he "stomped [his] foot on the floor and flinched [his] head," and that Officer Riley lifted his arm and elbowed the Plaintiff in his face. (Compl. at 7.) He alleges he suffered "a minor cut inside [his] mouth." *Id.* He states that Officer Riley wrote up the Plaintiff for assaulting him. *Id.*

The Plaintiff is seeking a transfer from the ASGDC, and actual damages for the fear and mental anguish he has alleged he has endured and damages to cover future medical expenses for treatment for his nose injury and mental therapy and to provide support for his family until he is able to work again. (Compl. at 8.)

---

[3] The undersigned notes that it appears that the pages of the Complaint may be out of order. However, the undersigned has reviewed and summarized the entire Complaint.

4

## APPLICABLE LAW

**SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the

5

existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## **DISCUSSION**[4]

Reviewing the Complaint, the Plaintiff has alleged excessive force and failure to protect claims and claims relating to the conditions of his confinement and his mail.[5]

**Excessive Force Claims**

As set forth above, the Plaintiff alleges several instances of excessive force. The Eighth Amendment prohibits those who operate prisons from using "excessive physical force against inmates." *Farmer v. Brennan*, 511 U.S. 825 (1994). An inmate's Eighth Amendment claim involves a subjective component and an objective component. "Specifically, Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Id.*

---

[4] Initially, the undersigned notes that some of the relief requested by the Plaintiff (i.e. a transfer out of ASGDC) is now moot as he is no longer incarcerated at the ASGDC. *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir.2009) (holding "as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.").

[5] The undersigned notes that the Plaintiff states in his response to the Defendants' Summary Judgment Motion that there are videotapes depicting many of the incidents of which he complains. However, there are no videotapes in the record.

To prove the subjective component, a plaintiff must show that an officer acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Factors in determining whether the use of force was wanton and unnecessary include "the need for an application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' " *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

> [O]fficials confronted with a prison disturbance must balance the threat [that] unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, we must grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (internal quotation marks omitted). Thus, the issue is not whether the use of force was absolutely necessary in hindsight, but "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.

Furthermore, the absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkins v. Gaddy*, ___ U.S. ___, 130 S.Ct. 1175, 1178-1179, ___ L.Ed.2d ___ (2010) (holding the core judicial inquiry when a prisoner alleges excessive force is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm). The extent of injury incurred is one factor indicative of whether

7

or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins,* 130 S.Ct. at 1178. However, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 1178-79.

Turning to the excessive force allegations in the Complaint, first the Plaintiff alleges that on March 2, 2010, at 7:00 p.m., the Defendant Sgt. Smith placed handcuffs on him too tightly when he was taking the Plaintiff out of his cell and the Defendant Officer Brockington helped Sgt. Smith lift the Plaintiff off the floor by the restraints. (Compl. at 7.) The Plaintiff states this caused him excruciating pain and making him scream and yell. *Id.*

The Defendant Smith states that March 2, 2010, while escorting the Plaintiff to his cell, he placed the Plaintiff in double-locking restraints which he states have a mechanism which prevents the restraints from tightening. (Defs.' Mem. Supp. Summ. J. Mot. Smith Aff. ¶ 7.) He states the Plaintiff was uncooperative and was attempting to lie down on the floor. (*Id.* at ¶¶ 8-9.) He states he and Officer Brockington carried the Plaintiff. *(Id.* at ¶ 9.) He states the Plaintiff then stated he would walk and the escort continued without incident. (*Id.* at ¶ 10.) He states medical staff evaluated the Plaintiff and no injuries were noted. (*Id.* at ¶ 11.)

There is no evidence before the Court sufficient to give rise to a genuine issue of fact as to whether the Plaintiff suffered a significant injury. *Strickler v. Waters,* 989 F.2d 1375, 1380-1381 n. 9 (4th Cir.1993) (holding mere incantation of physical and mental

injury, of course, is inadequate to survive a motion for summary judgment); *cf. Bell v. Wolfish,* 441 U.S. 520, 540 (1979)(holding "not every malevolent touch by a prison guard gives rise to a federal cause of action"). Although the Plaintiff is not required to show that he suffered more than a de minimis injury to maintain his excessive force claim, the "absence of [a] serious injury" nevertheless remains relevant in an Eighth Amendment inquiry. *Wilkins,* 130 S .Ct. at 1179-1180 (holding that the extent of injury may provide some indication of the amount of force applied, and stating that "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim")(internal citations omitted). After considering the *Whitley* factors, the record, and all inferences in a light more favorable to the Plaintiff, the evidence does not support a reliable inference of wantonness, and thus, the Plaintiff fails to show that the Defendants' conduct violated his constitutional right. The evidence does not support a reliable inference of wantonness.

Second, the Plaintiff alleges that on March 10, 2010, while he was being escorted to the shower by the Defendants Officer David Riley and Officer Green, he and Officer Riley had a verbal altercation. He states that he "stomped [his] foot on the floor and flinched [his] head," and that Officer Riley lifted his arm and elbowed the Plaintiff in his face. (Compl. at 7.) He alleges he suffered "a minor cut inside [his] mouth." *Id.* The Plaintiff admits that he and Officer Riley had a verbal altercation and that he stomped his foot and flinched his head.

The Defendant Officer Riley states that he and Officer Green were escorting the Plaintiff back to his cell after the Plaintiff had refused to shower. (Defs.' Mem. Supp. Summ. J. Mot. Riley Aff. ¶¶ 6-7.) He states the Plaintiff changed his mind and decided

9

he wanted to shower after all and he became disruptive and threatening when the officers refused his request to return to the showers.  (*Id.* at ¶¶ 7-8.) Officer Riley states the Plaintiff threatened to head butt him and that when the Plaintiff did attempt to head butt Riley, Riley blocked him with his arm.  Riley states his arm hit the Plaintiff in the chin.  *Id.* He also states that medical staff evaluated the Plaintiff and noted no injuries. *(Id.* at ¶ 10.) Officer Riley states he lifted his elbow to protect himself in a defensive action from the Plaintiff's head butt.

The undisputed evidence is that following a verbal altercation with officers, the Plaintiff was being belligerent when he stomped his foot and flinched his head. Considering the circumstances, Officer Riley was reacting to an uncooperative inmate. In any event, there is no evidence that Officer Riley hit the Plaintiff "maliciously and sadistically to cause harm."  Further, again there is no evidence before the Court sufficient to give rise to a genuine issue of fact as to whether the Plaintiff suffered a significant injury. As stated above, although the Plaintiff is not required to show that he suffered more than a de minimis injury to maintain his excessive force claim, the "absence of [a] serious injury" nevertheless remains relevant in an Eighth Amendment inquiry.  *Wilkins,* 130 S .Ct. at 1179-1180.  Here, accepting the Plaintiff's allegation that he suffered a minor cut to his mouth, his injury is clearly de minimis.

After considering the *Whitley* factors, the record, and all inferences in a light more favorable to the Plaintiff, the evidence does not support a reliable inference of wantonness, and thus, the Plaintiff fails to show that the Defendant Riley's conduct violated his constitutional right.  The evidence does not support a reliable inference of wantonness because Riley's use of force was plausibly a good-faith effort necessary to protect himself

10

and maintain or restore discipline and does not indicate an express malicious or sadistic intent to punish the Plaintiff.  Based on the foregoing, the Plaintiff's excessive force claim should be dismissed.

Finally, the Plaintiff alleges that on March 1, 2010, the Defendant Captain Buford ordered that the Plaintiff be stripped of his clothing on two occasions for his own sexual gratification.  *Id.* [6]  The Defendant Buford states that the Plaintiff refused to surrender a pair of shorts which were not issued to him.  (Defs.' Mem. Supp. Summ. J. Mot. Ex. Buford Aff. ¶ 10.)  Captain Buford states the Plaintiff was ordered to surrender the shorts while in his cell and he was given a towel to cover up.  *Id.* He states the Plaintiff was videotaped from the waist up surrendering the shorts.  *Id.*  As for the other incident, the Defendant Buford states that the Plaintiff was being transported to a court appearance and he was being uncooperative about changing into civilian clothing in an apparent attempt to delay the court hearing.  (Defs.' Mem. Supp. Summ. J. Mot. Ex. Buford Aff. ¶ 20.)  Buford states he threatened that the officers would change the Plaintiff's clothing if he did not cooperate, but that eventually the Plaintiff cooperated and changed into the civilian clothing.  *Id.*

Other than the Plaintiff's own conclusory allegations, the Plaintiff has not presented any evidence to support his claim that he was stripped for Captain Buford's sexual gratification.  There were legitimate reasons requiring the Plaintiff to change his clothing. The Plaintiff has failed to present evidence that the above Defendants were acting "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline.  *Whitley v. Albers,* 475 U.S. 312, 320-21

---

[6]Because allegations of sexual abuse by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind, allegations of such abuse are cognizable as Eighth Amendment claims." *Boddie v. Schnieder,* 105 F.3d 857, 861 (2d Cir.1997).

11

(1986); *see also Wilkins.* Accordingly, the Plaintiff's excessive force claims should be dismissed.

**Failure to Protect Claims**

The Plaintiff alleges that on October 19, 2009, at 10:35 p.m., the Defendant Officer Michele Hughes opened his cell door and allowed another inmate to assault him causing the Plaintiff to suffer a broken nose, facial swelling, and mental stress. He states that on March 9, 2010, the other inmate was convicted of assault in magistrate's court. The Plaintiff also alleges that on December 20, 2009, he wrote a grievance to Assistant Director Kathy Harrell in which he complained that he felt unsafe at the ASGDC and requested a transfer. He also alleges he had previously voiced his concerns over threats and ill-treatment he alleges he received from the Defendant Captain Curtis Buford. He alleges glass was put into his food and that he complained on several occasions and began to fear for his life. He alleges he either received no response or his concerns were "swept under the rug." (Compl. at 6.) Liberally construing these allegations, the Plaintiff is alleging the Defendants failed to protect him.

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994) (internal citations omitted). A prisoner's claim that officials failed to protect him from harm is analyzed as a challenge to the prisoner's conditions of confinement. *Id.* The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer,* 511 U.S. at 828. "It is not, however, every injury suffered by one prisoner at the hands of another that translates into

constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Rather, the Eighth Amendment is violated only when the plaintiff demonstrates (1) that he was incarcerated under conditions posing substantial risk of serious harm and (2) that the officials displayed "deliberate indifference" to his safety. *Id. See also Woodhaus v. Virginia,* 487 F.2d 889, 890 (4th Cir.1973) (holding "[a] prisoner has a right, secured by the eighth and fourteenth amendments, to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates. . . ."). "In prison-conditions cases [the required] state of mind is one of deliberate indifference to inmate health or safety." *Farmer,* 511 U.S. 834. Here, the Plaintiff cannot establish either that he was incarcerated under conditions posing substantial risk of serious harm or that the defendants were deliberately indifferent.

Other than the Plaintiff's conclusory allegations, the Plaintiff offers no evidence that the Defendants knew or should have known that the other inmate posed a risk to the Plaintiff's safety. The Plaintiff also has not offered evidence, other than these conclusory statements, that the defendants arranged the attack or knew the inmate was going to attack the Plaintiff and were deliberately indifferent to the Plaintiff's safety.

As for the glass which the Plaintiff alleges the Defendants placed in his food, the Plaintiff has again failed to state a claim. Even assuming that glass was in the Plaintiff's food and he did not place it there, other than the Plaintiff's own conlcusory allegations, there is no evidence that the Defendants deliberately placed the glass in the Plaintiff's food.[7] Accordingly, the Plaintiff has failed to state any excessive force claims.

---

[7] The Defendant Buford states that officials received a tip that the Plaintiff was going to put glass in his own food in an attempt to set up officers. (Defs.' Mem. Supp. Summ. J. Mot. Ex. Buford Aff. ¶ 8.)

13

**Conditions of Confinement**[8]

In his claims relating to the conditions at the ASGDC, the Plaintiff alleges he was moved to a cell which did not have a working paging system and was "out of sight and very filthy and inhumane . . ." (Compl. at 7.)   He also alleges that he was denied cleaning supplies.

With respect to a detainee's conditions-of-confinement claims, a prison official violates the Eighth Amendment (or the Fourteenth Amendment in the case of pretrial detainees) only when two requirements are met: (I) the alleged deprivation must be, objectively, "sufficiently serious," resulting "in the denial of 'the minimal civilized measure of life's necessities,' " and (ii) the prison official must have a 'sufficiently culpable state of mind,' " i.e., " 'deliberate indifference' to inmate health or safety." *Farmer,* 511 U.S. 825, 834 (citations omitted).  The Court further determined that its standard for "deliberate indifference" is "subjective recklessness as used in the criminal law."  *Id.* at 839-40.  "In short, the Court concluded that a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997) (internal citations omitted); *see also Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (applying Eighth Amendment analysis in a conditions-of-confinement case filed by a state pre-trial detainee). Further, the Prison Litigation Reform Act ("PLRA") provides:

---

[8] It appears at the time of the incidents alleges in the Complaint, that the Plaintiff was a pretrial detainee at the ASGDC.

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).

Even assuming the cell in which he was placed was filthy and he was denied cleaning supplies and the paging system was not functioning, the Plaintiff has failed to state a claim. There are no allegations or evidence in the record indicating the Plaintiff suffered any injury, physical or emotional, resulting from the alleged filthy cell or other conditions of his confinement. Accordingly, the Plaintiff has failed to state claim regarding the conditions of confinement at the ASGDC.

**Mail Claims**

The Plaintiff alleges that on March 1, 2010, that the Defendant Buford entered his cell and tampered with his mail and that his legal mail was taken while he was in court. (Compl. at 6.) The Defendant Buford denies these allegations. (Defs.' Mem. Supp. Summ. J. Mot. Ex. Buford Aff. ¶ 14.) The Plaintiff does not specify what specific mail was interfered with beyond stating that his mail was tampered with and his legal mail was taken.

First, the Plaintiff does not specifically state how the Defendant "tampered" with his mail. This allegation is simply too vague to state a claim for any constitutional violation. To the extent Plaintiff claims his legal mail was taken, such a claim is typically analyzed as an access to court claim. The Fourth Circuit Court of Appeals has held that "the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interests, and therefore, constitutional . . ." *Altizer v. Deeds,* 191 F.3d 540, 547-548 (4th Cir.1999), However, in a footnote, the court also noted that "[i]nspecting an

inmate's legal mail may implicate the inmate's Sixth Amendment right to communicate freely with his attorney in a criminal case." *Id.* at 549, n. 14 (*citing Wolff v. McDonnell,* 418 U.S. 539, 575, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). To establish that his rights have been violated by the Defendants, the plaintiff must demonstrate that there was some actual harm or prejudice to his ability to communicate with the court or counsel. *Lewis v. Casey,* 518 U.S. 343 (1996). *See also Lloyd v. Vincent,* C.A. No. 4:03-1546-25H, 2004 WL 3249250, *4 (D.S.C. 2004) ("To state a claim based on delay or nondelivery of legal mail, a prisoner must allege adverse consequences as a basis for the allegation that the delay or nondelivery deprived him of meaningful access to the courts.").

Even assuming the Defendant tampered with and/or confiscated the Plaintiff's legal mail, the Plaintiff has failed to state a claim because he has not alleged any injury. To establish that his rights have been violated in regard to his mail claim, the Plaintiff must demonstrate that there was some actual harm or prejudice to his ability to communicate with the court or counsel. *Griffin v. Virginia,* 2002 WL 32591574 *3 (W.D.Va.2002) (unpublished) (*citing Lewis v. Casey,* 518 U.S. 343 (1996)); *Carter v. Hutto*, 781 F.2d 1028, 1031-32 (4th Cir.1986) (holding a cause of action for destruction of legal mail requires allegations of important or irreplaceable nature of the mail in question and detriment suffered by the ensuing deprivation of meaningful access to the courts). Here, the Plaintiff has not alleged any harm or prejudice in any court action resulting from the tampering or confiscating of his legal mail. In fact, the Plaintiff has not even alleged that he had a court case pending at the time. Because the Plaintiff has failed to allege that the alleged tampering of his legal mail caused an actual injury, he fails to state a claim

regarding his mail and the Defendants should be granted summary judgment on these claims.[9]

**Supervisory Liability**

Finally, in regard to the Defendants Fogle, Higgins, and Myers, the Plaintiff alleges only that these Defendants failed to respond to his communications that he was being threatened. He does not allege that they actively participated in any alleged deprivation. Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh,* 275 F.3d 391, 402 (4th Cir. 2001)(internal citation omitted). Therefore, in order to establish liability under § 1983, the Plaintiff must specify the acts taken by each Defendant which violate his constitutional rights. Some sort of personal involvement on the part of each defendant and a causal connection to the harm alleged must be shown. *See Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir. 1986). Further, respondeat superior cannot form the basis of a claim for a violation of a constitutional right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978)

It is well-established that failing to respond to a grievance is not the type of personal involvement required to state a claim of deliberate indifference. *See Paige v. Kupec,* 2003 WL 23274357 *1 (D.Md. March 31, 2003) (holding a defendant is not deliberately indifferent to his serious medical needs by denying administrative grievances, or by failing to respond to such grievances). At best then, the Plaintiff names these Defendants in their official or supervisory capacity. However, as previously noted, there is no respondeat superior liability under § 1983. *See Monell,* 436 U.S. 658 (1978); *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir.1997). When a supervisor is not personally involved in the alleged

---

[9]The undersigned also notes that prisoners have no legitimate expectation of privacy in their cells. *Hudson v. Palmer,* 468 U.S. 517, 525-26 (1984).

wrongdoing, he may be liable under § 1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. *Fisher v. Washington Metropolitan Area Transit Authority,* 690 F.2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994). Here, the Plaintiff fails to make any allegations which would support a finding of liability based upon supervisory liability. Consequently, the Plaintiff has failed to state a claim against the Defendants Fogle, Higgins, and Myers.

## CONCLUSION

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. # 42) be GRANTED and the Complaint be DISMISSED with prejudice.

**IT IS SO RECOMMENDED.**

s/Bruce Howe Hendricks
United States Magistrate Judge

March 3, 2011
Charleston, South Carolina

**The Plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).